### 5733.  WATSON *v.* SMITH.

WADE, J.  1. Since "an express warranty excludes an implied warranty on the same or a closely related subject, but not an implied warranty on an entirely different subject," a stipulation, in a contract for the sale of live stock, that the vendor "does not warrant the health, life, and soundness of said stock, but only the title thereto," excludes any warranty as to the "health, life, and soundness" of the stock and all related subjects, but does not exclude the implied warranty fixed by law that the article or thing sold is merchantable and reasonably suited to the use intended (Civil Code, § 4135). *Barber* v. *Singletary,* 13 *Ga. App.* 171 (78 S. E. 1100). See also *Bateman* v. *Warfield,* 12 *Ga. App.* 259 (77 S. E. 104).

2. A purchase-money note given for a horse, which contains the following provision: "It is expressly understood that the said H. H. Smith [seller] does not warrant the health, life, and soundness of said stock, but only the title thereto, and in case of death thereof or loss in any other way I [the purchaser] agree to sustain the loss," does not, in a suit thereon, prevent the filing of a defense which sets up that the horse described in the note, and purchased for a draft horse, would balk and refuse to pull the lightest vehicle, and was unfit for the purpose for which he was purchased, and therefore worthless, and that this was known to the seller at the time of the sale, though the seller then guaranteed that the horse would work well in harness and would pull buggies, wagons, and any other vehicle.

3. The words "but only the title thereto," following the words "does not

warrant the health, life, and soundness" of the horse sold, in the con-
tract referred to above, limited the extent of the refusal to warrant, and
confined such refusal to the particular things named, or to closely re-
lated subjects, and did not amount to an agreement to waive the implied
warranty, fixed by law, that the horse was reasonably suited for the
purpose intended. There is in this contract an express refusal to war·
rant "life, health, and soundness," and an express warranty of title
alone; but there is no *express* refusal to warrant that the horse sold
is reasonably suited for the purpose intended; and hence this war-
ranty attached, since it is always implied by law, unless expressly
waived or withheld. It might be otherwise if the language were broader
and more comprehensive.

4. "The essential thing to be ascertained in a suit upon a promissory note
given for a particularly described chattel, in order to exclude parol evi-
dence, is whether or not it varies the terms of the note, or, if the agree-
ment has been integrated in the note, whether it varies the terms of the
contract as expressed in the note. . . The maker of a negotiable
note for the purchase of a chattel may incorporate therein the complete
contract of sale; and when this is done, the law will not permit him to
prove different or additional terms. . . The maker of a negotiable
note for the purchase of a chattel may, without integrating the entire
agreement of sale, express therein partial terms of sale." *Pryor* v.
*Ludden & Bates Southern Music House*, 134 *Ga.* 288, 291, 292 (67 S. E.
654, 28 L. R. A. (N. S.) 267). The note in question indicates upon its
face that the maker did not integrate in the writing all the terms of the
sale, since there is no refusal therein to warrant that the object sold
was reasonably suited for the purpose intended; and therefore the court
erred in excluding the parol evidence offered to show a failure of con-
sideration, consequent upon a breach of a contemporaneous parol express
warranty that the horse sold was suited for certain purposes.

*Judgment reversed. Roan, J., absent.*
DECIDED AUGUST 22, 1914.

Complaint; from city court of Dublin—Judge Hicks. May 12,
1914.

At the trial the defendant "offered to testify as follows: 'At the
time I purchased the horse for which the plaintiff has sued me, I
informed Mr. Smith, the plaintiff, that I wanted the horse for the
purpose of driving to a buggy and hauling a wagon, and Mr. Smith
told me at the time he sold me the horse, the purchase-money of
which is now being sued for, that the horse would pull the buggy
and work to the wagon, and that if he did not I could return the
horse and that he would let me have another horse or give me back
my note. I acted upon the statement of Mr. Smith, and, relying
upon that statement, I bought the horse and executed the note sued
upon and carried the horse off. After I purchased the horse I un-
dertook to drive him to the buggy; the horse would balk and refuse

to go, and he was absolutely unfit for a buggy horse, on account of the fact that he would not pull the buggy. I undertook to work the horse to the wagon, and he would not pull the wagon, with the lightest load on the same, and I could not use the horse at all for the purpose that I purchased him. I went back and tendered the horse back to Mr. Smith and informed Mr. Smith that the horse would not work, and Mr. Smith refused to give me another horse or return me my note.'" One of the grounds of the motion for a new trial is that the court erred in refusing "to permit the above evidence to go to the jury, upon objection of counsel for plaintiff that the note sued on has a stipulation that the plaintiff does not warrant the life, health, or soundness of said horse, but only title; and that the evidence tended to vary the written contract," and "tended to set up an express warranty, when the contract in writing is distinctly negative."

*Burch & Burch,* for plaintiff in error.
*Davis & Sturgis,* contra.